Isabel GOMEZ, Plaintiff,

v.

Robert W. PELLICONE, individually, John F. Sullivan, individually, Stephen C. Lando, individually, and the Eastchester Union Free School District, Defendants.

No. 96 CIV. 06778(BDP).

United States District Court, S.D. New York.

Nov. 20, 1997.

Jane B. Gould, Lovett & Gould, White Plains, NY, for Plaintiff.

Janice Berkowitz, Amhuty, Demers & Mc-Manus, Albertson, NY, Craig Benson, Rains & Pogrebin, Mineola, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### INTRODUCTION

Plaintiff Isabel Gomez has asserted claims against defendants Robert W. Pellicone, John F. Sullivan, and Stephen C. Lando (collectively, the "individual defendants") and the Eastchester Union Free School District (the "District") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. § 1983; and the New York State Human Rights Law, Executive Law § 296 *et seq.* During the events giving rise to this action, Gomez was a clerical employee in the District's Guidance office. The individual defendants were employed by the District in various supervisory positions over Gomez.

Plaintiff asserts a variety of claims. Plaintiff's first and second claims, filed pursuant to § 1983, allege that defendants violated her First Amendment rights to free speech and to petition government for the redress of grievances. Plaintiff's third claim, filed pursuant to § 1983, is that defendants violated her right to Equal Protection, as provided by the Fourteenth Amendment. Plaintiff's fourth claim is that defendants violated her right to be free from race and national origin discrimination in her workplace, as guaranteed by Title VII of the Civil Rights Act of 1964 and by the New York State Human Rights Law. Plaintiff's fifth and sixth claims are that defendants violated her right to be free from workplace retaliation, as guaranteed by Title VII, the New York State Human Rights Law, and Section 75-b of the New York State Civil Service Law.

The defendants have moved for summary judgment. For the reasons that follow, the defendants' motion is granted. Plaintiff's claims against the individual defendants under § 1983 are dismissed because the individual defendants are entitled to qualified immunity. In addition, they are not subject to suit under Title VII because they were not Gomez' employer. Plaintiff's claims against the District for race and national origin discrimination and for retaliation in violation of the First and Fourteenth Amendments are dismissed because plaintiff has presented no admissible evidence on the basis of which a reasonable jury could find in her favor. Because this Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, those claims are dismissed as well. After discussing the facts of the case in a light most favorable to plaintiff and reviewing the standard for summary judgment, the liability of the individual defendants and of the District will be discussed in turn.

### BACKGROUND

Plaintiff Isabel Gomez performed clerical work at the Eastchester Union Free School District. Defendant Robert W. Pellicone ("Pellicone") is the Superintendent of Schools of the District. Defendants John F. Sullivan ("Sullivan") and Stephen C. Lando ("Lando") are the Principal and Assistant Principal, respectively, of the District's high school, where Gomez worked.

In June 1993, Gomez was directed by Dr. Ronald Naiman, Director of Pupil Personnel for the District and plaintiff's superior, to alter a student's transcript. Dr. Naiman issued that request on the basis of instructions from Pellicone. Although plaintiff's duties included the entering and changing of grades on students' transcripts, in this case she refused to do so, having concluded that the change was unwarranted and would contravene District policy. Typically, such changes were made at the behest of the student's guidance counselor or teacher. In this instance, as far as plaintiff knew, neither the student's teacher nor guidance counselor had approved the change. Gomez believed it was unusual for the Superintendent to direct that a grade be changed without the approval of the student's teacher or guidance counselor and Gomez had never previously been directed to change a student's transcript at the request of the Superintendent. Plaintiff believed that the student's grades were being changed because his mother was politically influential in the community and had persuaded Pellicone to arrange for the grade change in order to improve the student's chances for admission into college. Gomez also notes that the student was white and contends that the grade change was one ex-

ample of the District's racially discriminatory policies. Informed of Gomez's refusal to enter the grade change, Naiman told her to speak with Pellicone. Plaintiff, along with the school's three guidance counselors, met with Pellicone about the procedures for changing student transcripts.

Pellicone stated that the grade change was appropriate and was the result of several meetings among Pellicone, the student, and his mother. Nonetheless, Pellicone told Gomez and the guidance counselors that he would consider their concerns. Pellicone had determined that personal problems had caused the student to perform poorly enough to risk failing his courses. Ultimately, Pellicone changed the student's transcript himself, raising the student's grades to passing ones.

Dr. Naiman, according to Gomez, was angered by her refusal to follow instructions and yelled at her, telling her that her job was in jeopardy. Aside from Dr. Naiman's criticism of plaintiff and plaintiff's discussion with Superintendent Pellicone and the guidance counselors, no one at the District ever mentioned the transcript incident to Gomez again.

Various district personnel had taken notice, however, of Gomez's chronic lateness to work. Beginning in 1993, plaintiff frequently reported to work late. Lando and Sullivan had numerous conversations with plaintiff about her tardiness. Although plaintiff and defendants dispute the particular days that plaintiff was late to work, there is no dispute that plaintiff often arrived after her scheduled start time of 7:30 AM. By plaintiff's own admission, she regularly arrived at work 10 or more minutes late. Plaintiff's tardiness resulted from the fact that each morning she dropped her son off at a before school program whose doors did not open until 7:30. While plaintiff disputes neither that her work day was scheduled to start at 7:30 nor that she regularly arrived after that time, she does contend that the person who held her position previously began work at 8:00 AM without any problem. Plaintiff has provided no admissible evidence in support of that contention, stating that she was informed by another District employee of the work habits of the woman who previously held plaintiff's position.

District officials attempted to accommodate plaintiff's family responsibilities by adjusting her work schedule. Dr. Naiman, at plaintiff's request, allowed her to start work at 8:00 AM rather than 7:30 AM. This change, which was implemented on a trial basis after the grade change incident, was to accommodate plaintiff's childcare arrangements. In spite of the later starting time, plaintiff's chronic lateness persisted. Plaintiff continued on the modified schedule from approximately September 1993 to January 1994. At that time, Dr. Naiman informed plaintiff that she would have to resume her normal 7:30 AM starting time because her co-workers had complained about her later starting time. Subsequently, Gomez asked Sullivan, the school Principal, about starting work later. Sullivan denied her request based on what he described as the best interests of the school and of the Guidance office. During the next two years, Sullivan and Dr. Naiman, and defendant Lando as well, wrote numerous memoranda to plaintiff regarding her chronic tardiness and, less frequently, her absences from work.

In June 1994, one year after the grade change incident, a personnel action taken by the District resulted in plaintiff's termination. Gomez, who lacked seniority, was "bumped" from her position by the District's decision to change a full-time secretarial position to a part-time position. The personnel change affected at least two other employees as well. After having been "bumped" from her full-time position, plaintiff was offered a part-time position, which she refused. Plaintiff filed a grievance regarding her termination, claiming that it breached the agreement between the District and plaintiff's union. Plaintiff ultimately prevailed on her grievance and was rehired, with full back pay, in February 1995, as a secretary in the Guidance office. Her new position had the same civil service title as the position she held prior to her termination.

Plaintiff also received disciplinary memoranda regarding her practice of bringing her son to work for all or part of the day. Sometime after the transcript incident, Plaintiff

withdrew her son from his pre-school program and began bringing him to work with her. At approximately 8:30 Gomez would leave work to take him to school, after which she would return to work. Plaintiff contends that other District employees were allowed to bring their children to work with them for portions of the day. Plaintiff was allowed to bring her son to school for a period of time, but Sullivan, the Principal, at some point prohibited her from doing so, due to the nature of her position and said that she would have to make other arrangements for her son in the morning.

During 1995 and 1996, plaintiff also began to receive memoranda regarding deficient work performance and misconduct. According to her direct supervisor at the time (one of the guidance counselors who had accompanied her to discuss the transcript change procedures with Pellicone), plaintiff had failed to complete assignments on time or in the correct manner. Plaintiff was also reprimanded for not accurately recording the times when she started or ended work and for unexcused absences.

In March 1996, plaintiff filed the first of two EEOC charges, alleging discrimination on the basis of national origin and unlawful retaliation. Plaintiff claimed that she was chosen to change the student's transcript in 1993 because of her national origin, and that a white employee would not have been requested to make such a change. Further, plaintiff alleged that she was retaliated against for her refusal to change the grade and for stating her belief that the change was unwarranted and unfair. Finally, Gomez suggested that the District's June 1994 personnel action constituted national origin discrimination and retaliation for her June 1993 refusal to change a student's transcript.

On May 1, 1996, plaintiff was notified that disciplinary charges were being brought against her based upon numerous incidents of lateness, falsification of time records, and other misconduct. In May 1996, plaintiff filed her second EEOC complaint, alleging that she had been retaliated against for filing her first EEOC complaint. The retaliation allegedly took the form of micro-managing plaintiff and unfairly scrutinizing her work,

time records, and attendance cards. Most importantly, plaintiff identified the initiation of the formal disciplinary proceeding as retaliation for her prior assertion of her rights. In September 1996, plaintiff commenced this lawsuit.

As a result of the disciplinary charges filed against plaintiff, a two day hearing was held before a neutral hearing officer on September 11 and October 9, 1996. The plaintiff, who was by this time represented by counsel, declined to testify and did not present any witnesses on her behalf. Several witnesses testified on behalf of the District. By a report dated January 27, 1997, the hearing officer upheld the District's charges of chronic lateness, insubordination, and other misconduct. The hearing officer found no evidence to validate Gomez' claims that the disciplinary charges were retaliation for plaintiff's having contested her previous layoff or for any other protected conduct. The hearing officer recommended that plaintiff be suspended for two months without pay. On February 4, 1997, the Board of Education adopted the decision of the hearing officer and suspended plaintiff without pay for two months, from February 5, 1997 through April 4, 1997.

During the pendency of the first set of disciplinary charges, plaintiff was notified, by letter dated October 7, 1996, of the filing of a second set of disciplinary charges. The basis of this disciplinary procedure was substantially the same as the first, namely that plaintiff was chronically late to work, had engaged in acts of misconduct, and was insubordinate. At the second hearing, held February 26, 1997, the District presented witness testimony, including testimony by plaintiff's coworkers. Plaintiff declined to testify or to offer any witnesses. By letter dated March 24, 1997, the hearing officer reported that he had found plaintiff guilty as charged. Another hearing was held April 10, 1997 to determine the appropriate penalty. Plaintiff and counsel were notified of the penalty hearing but did not attend it. By report dated April 28, 1997, the hearing officer recommended that plaintiff be dismissed from the District. Gomez has since been terminated by the District.

## DISCUSSION

## SUMMARY JUDGMENT

A motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hayes v. New York City Dep't. of Corrections*, 84 F.3d 614, 619 (2d Cir.1996); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos*, 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)); *Hayes*, 84 F.3d 614 at 619.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 382 (2d Cir.1996); *In re State Police Litigation*, 88 F.3d 111, 123 (2d Cir. 1996); *Hayes*, 84 F.3d at 619; *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988); *McNeil*, 831 F.Supp. at 1082 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam) (other citations omitted)); *see also Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991) (citing *Knight v. U.S. Fire Ins.*, 804 F.2d 9 (2d Cir.1986) (other citations omitted)). The Court must not weigh evidence or assess the credibility of potential witnesses, for such evaluations are to be conducted solely by the jury. *Hayes*, 84 F.3d at 619; *United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994); *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir.1994). A finding of disputed material facts that could reasonably be resolved in favor of either party precludes summary judgement. *Wernick*, 91 F.3d at 382

(quoting *Anderson v. Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511).

Generally, the burden is on the moving party to demonstrate that there is no genuine dispute respecting any material fact and that he is entitled to judgment as a matter of law. *In re State Police Litigation*, 88 F.3d at 123; *Gallo v. Prudential Residential Services, Limited Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). To oppose successfully a motion for summary judgement, the responding party "must set forth facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). A summary judgment motion cannot be defeated through mere speculation or conjecture. *Pollis v. New School for Social Research*, 829 F.Supp. 584, 586 (S.D.N.Y. 1993) (citing *Western World Ins. Co. v. Stack Oil. Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (other citations omitted)).

In the Title VII context, the nonmoving party, to oppose successfully a summary judgment motion, must establish a prima facie case of discrimination or retaliation. *McLee v. Chrysler Corporation*, 109 F.3d 130, 134 (2d Cir.1997). At the summary judgment stage, the standard that the plaintiff must meet in putting forth the prima facie case is "de minimis." *McLee*, 109 F.3d at 134. The plaintiff must offer evidence that would permit a reasonable inference of discrimination on the part of the employer. *McLee*, 109 F.3d at 134–135.

If the employer rebuts the prima facie case through a showing of legitimate, non-discriminatory reasons for the challenged employment action, the plaintiff must counter that evidence. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). The plaintiff must then produce "not simply 'some' evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not, [discrimination] was the real reason for the discharge." *Karen Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (quoting *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994) (internal quotations and other citations omitted)); *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 129 (2d

Cir.1996). Gomez must thus both present a prima facie case that she was discriminated or retaliated against and offer evidence in rebuttal of any legitimate, non-discriminatory reasons offered by the employer as justification for the challenged employment decisions. *Holt*, 95 F.3d at 129.

## INDIVIDUAL DEFENDANTS

## QUALIFIED IMMUNITY

The doctrine of qualified immunity entitles public officers to be shielded from liability for damages unless their conduct violates clearly established constitutional rights of which a reasonable person would have known, *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir.1996); *Lennon v. Miller*, 66 F.3d 416 (2d Cir.1995); *Zavaro v. Coughlin*, 970 F.2d 1148, 1153 (2d Cir.1992); *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991), or unless it was objectively unreasonable for them to believe that their acts did not violate those rights. *Anderson v. Creighton*, 483 U.S. 635, 638–639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir.1994).

The right alleged to have been violated must be clearly established at a level of specificity such that "a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. To be deprived of the defense of qualified immunity, a public official must not simply violate plaintiff's rights; rather the violation of plaintiff's rights must be so clear that no reasonable public official could have believed that his actions did not violate plaintiff's rights. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039.

Where the alleged constitutional violation includes a subjective component, as in the case of retaliation claims, the plaintiff "must offer specific evidence of improper motivation" to resist successfully a summary judgment motion. *Blue v. Koren*, 72 F.3d 1075, 1083 (2d Cir.1995). "If the conduct was objectively reasonable, a conclusory proffer of an unconstitutional motive should not defeat the motion for summary judgment." *Blue*,

72 F.3d at 1084. Rather, the plaintiff must "proffer particularized evidence of direct or circumstantial facts ... supporting the claim of improper motive." *Blue*, 72 F.3d at 1084. The particularized evidence may include "expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." *Blue*, 72 F.3d at 1084:

▮ The most substantial evidence of improper motive presented by plaintiff is that Dr. Naiman, according to plaintiff, told her that her job was in jeopardy after she refused to change a student's transcript in 1993. Dr. Naiman, of course, is not a defendant in this suit. Evidence of improper motive on his part has no bearing on the motives of the individual defendants Lando, Sullivan, and Pellicone. Moreover, the disciplinary actions directed at plaintiff, both formal and informal, were initiated by District personnel other than Naiman. Plaintiff has presented no evidence on the basis of which a reasonable inference could be drawn that Naiman acted in concert with the individual defendants.

Gomez has not put forth sufficient evidence of discrimination or retaliation to deprive any of the individual defendants of the defense of qualified immunity. In response to plaintiff's habitual tardiness, Pellicone initiated disciplinary proceedings. Lando and Sullivan documented plaintiff's tardiness and other misconduct, which misconduct was often reported by one of plaintiff's coworkers. Each of the individual defendants acted for justifiable reasons in accord with established procedures. Their actions do not suggest that plaintiff was unjustifiably singled out. Plaintiff's assertions that the individual defendants' actions were motivated by considerations of race or national origin or by the desire to retaliate against plaintiff for her exercise of her Constitutional or statutory rights do not, by themselves, deprive the individual defendants of qualified immunity. "Conduct that is objectively reasonable is not converted into a constitutional violation by the mere allegation of an unconstitutional motive." *Mascetta v. Miranda*, 957 F.Supp.

1346, 1354 (S.D.N.Y.1997). The actions of the individual defendants were objectively reasonable under the circumstances. They are, therefore, immune from liability for damages in an action filed pursuant to § 1983.

## TITLE VII EMPLOYER STATUS

■ Title VII provides for employer liability but not for individual liability. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995). In *Tomka,* the Second Circuit held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka,* 66 F.3d at 1313. Thus, the individual defendants cannot be sued under Title VII. Because the individual defendants are not an employer for purposes of Title VII, and are entitled to qualified immunity in a suit filed pursuant to § 1983, all claims against the individual defendants are dismissed.

## DISCRIMINATION CLAIMS

The analytical framework for evaluating a claim of discrimination in a Title VII disparate treatment case is well established. The plaintiff must first make out a prima facie case of unlawful discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Holt,* 95 F.3d at 129; *Quaratino,* 71 F.3d at 64. If the plaintiff makes out a prima facie case, the burden of production shifts to the defendant, who must articulate specific nondiscriminatory reasons for the challenged employment action. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Holt,* 95 F.3d at 129; *Quaratino,* 71 F.3d at 64. If the defendant satisfies this burden of production, the plaintiff must then demonstrate that the defendant's purported legitimate reason was in fact a pretext for a discriminatory motive. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94; *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Holt,* 95 F.3d at 129; *Quaratino,* 71 F.3d at 64. The plaintiff always bears the ultimate burden of proof. *St. Mary's*

*Honor Center v. Hicks,* 509 U.S. 502, 510–511, 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993). To prevail, the plaintiff must show not only that the defendant's claimed justification was not the real reason but also that discrimination was the real reason. *Hicks,* 509 U.S. at 514–515, 113 S.Ct. at 2751–52.

The facts alleged in plaintiff's complaint and in the materials submitted in support of plaintiff's opposition to summary judgment may be interpreted as asserting, in addition to her Constitutional discrimination claims, three separate discrimination claims under Title VII: discriminatory discharge; discriminatory failure to promote; and discrimination in terms, conditions, or privileges of employment.

In order to establish a prima facie case of discriminatory termination of employment, the plaintiff must show that she belongs to a protected class, that she was performing her duties satisfactorily, and that she was discharged under circumstances giving rise to an inference of discrimination on the basis of her membership in the protected class. *McLee,* 109 F.3d at 134.

■ Plaintiff Gomez has failed to establish her prima facie case, given the undisputed evidence that she did not perform her duties satisfactorily. Gomez admits in her deposition that she regularly arrived at work after her 7:30 AM start time, even after having been repeatedly warned that it was important for her to arrive at work on time. Plaintiff has offered no admissible evidence that any District employee who was allowed to report late to work on a regular basis. Plaintiff does allege that the woman who previously held her position, who was white, was allowed to begin work at 8:00 AM. Because this contention merely reiterates what plaintiff was allegedly told by another District employee, it is hearsay and would not be admissible at trial. Thus, this assertion cannot create a triable issue of fact sufficient to withstand summary judgment. Notwithstanding disputes about whether Gomez' work conduct was deficient in other respects, her chronic tardiness alone defeats her prima facie case.

■ Even if plaintiff had established a prima facie case, she offers no evidence to rebut the District's evidence that it disciplined and ultimately terminated her for insubordination, lateness, falsification of time records, and other misconduct. Plaintiff's failure to offer evidence in rebuttal of the District's stated legitimate and nondiscriminatory reasons for its actions precludes a finding of liability on the part of the District. *Hicks*, 509 U.S. at 516, 113 S.Ct. at 2752.

■ Plaintiff also contends that her June 1994 termination by the District was on account of her race and national origin. "Employers have the right to restructure jobs and job responsibilities, but they cannot use that process to implement discriminatory objectives. An employee must always show that her employer's decisions on restructuring—as applied to her—were made to displace her for impermissible reasons." *Quaratino*, 71 F.3d at 65. Here, Gomez has offered no admissible evidence that the June 1994 personnel action was taken in order to terminate plaintiff. Two other employees were also impacted by the decision. Gomez' termination resulted from the fact that she was the least senior employee. She also refused to accept the part-time position she was offered. These circumstances, without more, do not give rise to an inference of discrimination.

■ Plaintiff also alleges that the District discriminatorily failed to promote or transfer her to another position after it became clear that her family responsibilities did not permit her to arrive at work by her scheduled starting time. In order to establish a prima facie case for discriminatory failure to promote, the plaintiff must show "that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of discrimination." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. An inference of discrimination may arise if the position remains open and the employer continues to seek applicants of the plaintiff's qualifications, *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824, or if the position was filled by someone not a member of plaintiff's protected class. *de la Cruz v. New York City Human Resources Admin.*

*Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996).

Plaintiff has failed to establish a prima facie case that the District failed to promote or transfer her for an impermissible reason. Although plaintiff did discuss the possibility of a transfer with District personnel, she has presented no evidence that she actually applied for any position for which she was qualified.

In connection with her allegations of discrimination, plaintiff contends that she was the only Hispanic employed by the District in a non-janitorial position (a fact which the District disputes). Plaintiff also contends that her mother applied for, but was not offered, a job with the District. Neither of these contentions are sufficient to support any inference that plaintiff was unfairly denied a promotion or transfer on the basis of race or national origin. Plaintiff offers no evidence that her mother was qualified for the position for which she applied. Nor has plaintiff adduced any evidence of discriminatory hiring practices on the part of the District. Plaintiff has provided no evidence in support of her claim that she was discriminated against on account of race or national origin by not being transferred to a position that would accommodate her family responsibilities.

■ Plaintiff also contends that she was discriminated against in the terms, conditions, or privileges of her employment. Plaintiff alleges that other employees, who held positions different than plaintiff's, were allowed to bring their children to work with them for part of the day. But plaintiff has offered no evidence that she was not allowed to bring her son to work due to her race or national origin. In fact, plaintiff was permitted to bring her son to work in the morning, until it was determined that the demands of her particular position precluded her doing so. Defendants have offered evidence that the Guidance office, where plaintiff worked, was especially busy in the early morning, as students were likely to visit the Guidance office before the start of school. Plaintiff has not offered admissible evidence to rebut this claim. Plaintiff does not contend that any

employee in the Guidance office was allowed to bring their child to work for any part of the morning. Some of the employees that plaintiff asserts were allowed to bring their children to work were Hispanic, which fact further undermines plaintiff's claim that she was not allowed to do so on account of her race or national origin. Plaintiff alleges that she was treated unfairly but has offered no evidence that she was treated any differently than would have been any other employee who was chronically late to work.

Plaintiff argues that she was directed in June 1993 to change a student's transcript in part because of her race or national origin. Plaintiff has stated in her deposition and alleged in her complaint that she would not have been asked to change the student's grade if she were white. While the District contends that plaintiff was requested to change the grade because such tasks were part of her job, plaintiff relies on nothing other than her bare allegation that her race or national origin motivated District officials to request that she, rather than another employee, change the transcript. These circumstances permit no reasonable inference of discrimination.

In sum, plaintiff has failed to present sufficient admissible evidence that the defendants took, or declined to take, any action as a result of race or national origin discrimination. Moreover, plaintiff has failed to rebut the defendants' legitimate, nondiscriminatory justifications for the challenged employment actions. Both plaintiff's Constitutional and statutory claims of race and national origin discrimination must fail.

## RETALIATION CLAIMS

Plaintiff contends that she was retaliated against, in violation of both Title VII and the First Amendment, for refusing to change a grade on a student's transcript, for her exercise of her free speech rights, for her efforts to petition government for redress of grievances, and for her opposition to discriminatory and unfair practices within the District. Plaintiff contends that the change of the transcript of the student, who was white, and the selection of her, as a Hispanic, to enter the change, were both motivated by consider-

ations of race and national origin. Plaintiff opposed both these forms of impermissible discrimination and attempted to address them through talking to the District's guidance counselors and then to the Superintendent. Because plaintiff's Title VII and First Amendment claims rely on the same underlying facts, they will be considered jointly.

"It is well established that a public employer cannot discharge or retaliate against an employee for the exercise of his or her First Amendment free speech right." *Ezekwo v. NYC Health and Hospitals Corp.,* 940 F.2d 775, 780 (2d Cir.1991) (citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972)). An employee's speech is protected under the First Amendment if it concerns a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). To successfully resist summary judgment, a plaintiff must establish a prima facie case that his speech pertained to a matter of public concern and that his speech was a substantial or motivating factor in the adverse employment action. *Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 780 (2d Cir.1991); *Mascetta v. Miranda,* 957 F.Supp. 1346, 1355 (S.D.N.Y.1997) (citing *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.1993)). Whether speech concerns a matter of public concern is a question of law to be decided by the Court. *Ramakrishna C.V. Rao v. New York City Health and Hospitals Corp.,* 905 F.Supp. 1236, 1241 (S.D.N.Y.1995). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 781 (2d Cir.1991) (quoting *Connick v. Myers,* 461 U.S. 138, 147–148, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983)). "The mere fact that a public employee choose to discuss privately his concerns with his employer as opposed to expressing his views publicly does not alter the analysis." *Ezekwo,* 940 F.2d at 781.

■ Whether the speech was a motivating or substantial factor in the adverse employment action is a question of fact. If the plaintiff establishes a prima facie case, the

defendant may avoid liability by demonstrating that it would have made the same decision or taken the same action in the absence of the protected speech. *Mascetta,* 957 F.Supp. at 1355 (quoting *Frank v. Relin* at 1329).

"A prima facie case of retaliation under Title VII requires the plaintiff to show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Holt,* 95 F.3d at 130 (quoting *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995) (internal quotations omitted)); *Karen Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996).

To rebut the plaintiff's prima facie case of retaliation, the defendant must offer legitimate reasons for its action. *Holt,* 95 F.3d at 130. The plaintiff must then offer evidence that defendant's purported reasons are in fact pretextual and that the true reason for defendant's actions was illicit discrimination. *Van Zant,* 80 F.3d at 714.

■ With respect to neither the Title VII nor the First Amendment claim has plaintiff established the necessary prima facie case. Plaintiff has adduced no admissible evidence sufficient to create a triable issue of fact as to whether any of the individual defendants retaliated against her in the aftermath of the grade change incident, either for her refusal to change the grade, for her opposition to what she viewed as discriminatory policies, or for her exercise of her First Amendment rights. Plaintiff claims that Dr. Naiman was incensed by her conduct, berated her, and said that her job was in jeopardy. But it was after the grade change incident that he allowed Gomez to change her work schedule in order to accommodate her son's school schedule. Moreover, Naiman played little or no role in the subsequent actions that plaintiff claims were retaliatory. Naiman had no involvement in the personnel action that re-

sulted in Gomez being "bumped" from her position. Nor did he initiate either set of disciplinary proceedings, although he did testify as one of several witnesses. Defendants Lando and Sullivan documented plaintiff's habitual tardiness, but this could not have been in retaliation for plaintiff's refusal to change the student's grade because neither Lando nor Sullivan was involved in that incident, which took place more than two years earlier. Superintendent Pellicone played a role in initiating the disciplinary charges against plaintiff, but plaintiff has adduced no admissible evidence sufficient to support a finding that he did so in retaliation for plaintiff's refusal to change a student's transcript or for her decision to speak out about what she viewed as the inappropriateness of the change. The disciplinary charges were filed nearly three years after the grade change incident. Indeed, there is no evidence that Pellicone was especially irritated with plaintiff even at the time of the grade change incident. By plaintiff's own admission, when she raised her concerns with Pellicone, he stated simply that he would look into the matter.

There is no evidence that plaintiff's speech was a factor in the adverse employment actions taken by the District and the individual defendants.[1] After the grade change incident occurred, no one ever mentioned it to plaintiff again. The disciplinary proceedings of which plaintiff complains were initiated at least two years after the incident. The two individuals directly involved in the grade change incident, Pellicone and Naiman, were not directly involved in any of the subsequent and proximate action that plaintiff claims was in retaliation for her having spoken out. The fact that those individuals whom plaintiff claims retaliated against her would have had no reason to do so, and the fact that most of the alleged retaliatory conduct did not occur in proximity to the event that plaintiff claims prompted the retaliation means that no reasonable jury could find for plaintiff on this issue. Plaintiff has offered no evidence, as-

---

1. Assuming, *arguendo,* that the grade change incident may have been an aspect of a District practice of racial discrimination, Gomez' discussion of District grade change policies did constitute speech on a matter of public concern. *See*

*Mascetta v. Miranda,* 957 F.Supp. 1346, 1356 (S.D.N.Y.1997) (statements concerning lax prison security constitute speech on a matter of public concern).

suming her speech did pertain to a matter of public concern, that she was in any way retaliated against on account of it. Finally, it should be noted that the hearing officers and the School Board, rather than any of the individual defendants, were responsible for the disciplinary actions ultimately taken against plaintiff.

Plaintiff's June 1994 termination, as previously discussed, was the result of a personnel action that also impacted two other employees. This action occurred a year after the grade change incident, during which time no one had mentioned the incident to plaintiff. Plaintiff's claim that the District took that personnel action in retaliation for her conduct in connection with the June 1993 grade change incident is pure speculation that lacks evidentiary support.

There is evidence, however, of ample reasons, unrelated to Gomez' speech or other protected conducted, that justified the employment and disciplinary decisions of the District. Gomez concedes that she was regularly late to work. Gomez offers no evidence of other employees who were late as regularly as she yet not disciplined for their tardiness.

Ultimately, plaintiff's retaliation claims are premised on the notion that the individual defendants, as well as other school personnel perhaps, had entered a conspiracy whose ultimate purpose was to terminate plaintiff. Otherwise, Gomez' retaliation claim is not plausible. Yet, plaintiff has offered absolutely no admissible evidence that might create a triable issue of fact regarding the existence of a conspiracy on the part of the individual defendants, much less a conspiracy that would involve the other school officials who either noted plaintiff's various forms of misconduct, complained to one of the defendants about it, or testified at one of the two disciplinary hearings. In sum, plaintiff has failed to set forth facts sufficient to establish a prima facie case of unlawful retaliation. As with her discrimination claims, even if plaintiff had established a prima facie case, she has not come forward with sufficient evidence to rebut the defendant's legitimate, nondiscriminatory justifications for the challenged employment actions.

Plaintiff also contends that the defendants infringed her right to petition government for redress of grievances. This claim has no merit. Gomez discussed the District's procedures for changing students' grades with both Pellicone and the guidance counselors. It is not disputed that Pellicone allowed Gomez and the guidance counselors to express their concerns. The fact that Pellicone changed the student's transcript anyway, or that he may not have changed any District policy as a result of Gomez' action does not burden her right to petition government for redress of grievances. The First Amendment provides that one may petition government, not that the government must accede to one's demands.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. Because the Court declines to exercise jurisdiction over plaintiff's state law claims, those claims are dismissed without prejudice. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

**SO ORDERED.**