Robert DAVIS, Heidi Geraci, Nicholas Tartaglione, and Angela Geraci,
Plaintiffs,

v.

Glenn C. CAREY, individually, David Kelly, individually, Robert Liffland, individually, Cheryl Harrington, individually and The Village of Pawling, New York, Defendants.

No. 97 Civ. 4048(BDP).

United States District Court,
S.D. New York.

Aug. 27, 1999.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for plaintiffs.

David L. Posner, McCabe & Mack, Poughkeepsie, NY, for defendants.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiffs Robert Davis, Heidi Geraci, Nicholas Tartaglione, and Angela Geraci commenced this action pursuant to 42 U.S.C. §§ 1983 and 1985 and New York State Human Rights Law § 296 against the defendants Glenn C. Carey, David Kelly, Robert Liffland, Cheryl Harrington and the Village of Pawling (collectively the "defendants") alleging retaliation for the exercise of their First Amendment rights, as well as constructive discharge and due process violations. The defendants move for summary judgment pursuant to Fed. R.Civ.P. 56. For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

At the times relevant to this suit, Glenn Carey was the Mayor of the Village of Pawling (the "Village"), Cheryl Harrington was the Clerk of the Village, and Robert Liffland and David Kelly were Trustees of the Village. Charles Steven Harrington, Cheryl Harrington's husband, was employed by the Village police department as a sergeant until his resignation effective July 1994.

The plaintiffs were all members of the Village of Pawling's police department. They essentially allege that they were subjected to various adverse employment actions because of their First Amendment protected activity, namely the formation of a police association and a local Police Benevolent Association ("PBA") chapter.

Plaintiffs contend that they were exposed to the following adverse action by the defendants. In May 1995, the police department received a complaint from a private citizen concerning Robert Davis' use of his position as a police officer to threaten and intimidate the citizen while working as an off-duty private security officer. On June 19, 1995, Police Commissioner Carpentieri wrote a memo to the Mayor explaining the potential liability to the Village because of off-duty jobs held by police officers. Accordingly, on November 20, 1995, the Village, concerned with these liability issues, adopted regulations for the police department governing the off-duty employment of all of its police officers. The regulation covered several fields of employment within 20 miles of the Village, such as, *inter alia,* process servers, security officers, and personnel investigators. As one such affected officer, Davis transferred his ownership interest in Housewatch, Inc., to his wife, Bonnie Davis, and the company continued to operate. Davis claims this regulation constituted retaliation and violated due process.

Davis also claims the denial of reimbursement of $150 for a claimed expendi-

ture of personal funds on an undercover drug purchase constituted First Amendment retaliation. Neither the Village nor the police department had a budget line for undercover drug purchases and Davis did not receive prior approval for his personal expenditure of funds to buy drugs.

Davis was given the title of investigator by Police Commissioner Carpentieri on July 19, 1996, with a six month probationary period. The title did not entail a monetary increase or any supervisory responsibilities. After receiving complaints from other police officers about the investigators encroaching on their duties, the Village Board eliminated the position of investigator on December 27, 1996, within Davis' probationary period. This elimination affected Robert Durkin, another officer as well. Davis asserts that the elimination of the investigator position also supports his First Amendment retaliation claim.

In July 1997, Davis was indicted by a Dutchess County Grand Jury upon charges presented by the New York State Attorney General's office. Included in the indictment was the charge that he fraudulently obtained workers' compensation benefits from an additional job he held with the New York Division for Youth (the "Division") while continuing to work as a police officer in the Village, notwithstanding the claimed disability. On September 8, 1998, Davis pled guilty to Filing a False Instrument in the First Degree, in connection with the workers' compensation claim. Davis claims Mayor Carey communicated misinformation to the Division.

In 1995 Heidi Geraci sought promotion to the position of sergeant. Police Commissioner Carpentieri told her that Mayor Carey had told him that if she wanted serious consideration for this position she should resign as vice president of the police association. She subsequently resigned as vice president in October 1995, and as of December 1995, was promoted to permanent sergeant.

On October 29, 1996, Heidi Geraci was injured in an automobile accident while on duty and remained out of work until mid-January 1997. She was paid in full during this time minus temporary payroll withholding taxes. At first, accumulated sick days were deducted for her absences, but when Harrington, the Village Clerk, was informed that Geraci was being paid under § 207–c benefits, her sick days were "re-credited." Geraci was the first Village employee to receive 207–c benefits. Geraci claims the withholding of payroll tax and the deduction of sick days that were re-credited constituted retaliation for protected activity and amounted to a violation of due process.

On May 22, 1997, Harrington received a copy of a letter by Heidi Geraci requesting an investigation into possible gender bias in connection with her position as a sergeant. Heidi Geraci claims that because of Harrington's publication of the letter she was subjected to "retaliation for having opposed gender based discrimination in the workplace which right is guaranteed her by reason of Section 296 et seq. of the New York State Executive Law."

Nicholas Tartaglione started to work for the Village as a part-time police officer on September 15, 1994, and became a full-time officer on January 15, 1995. Tartaglione resigned from the force on April 17, 1996. Essentially Tartaglione claims he was retaliated against by Mayor Carey because of a letter he wrote in 1996 to the editor of the local newspaper critical of the Mayor. The letter was never published, but the Mayor became aware of its contents. The letter stated in part,

> I would like to bring to your attention a situation the Pawling Police Dept. is experiencing with their part time Mayor, Glen Carey. Mr. Carey has on several occasions used his position to take advantage of the law.... On March 30th, to be exact, a patrol car was taken from in front of police headquarters by Mayor Carey and hidden in order to play some kind of joke on the police dept. Well, at

the same time that he was hiding the police car, a Pawling police officer had requested back up with a disorderly person on Rt 55 about a mile away, but was unable to get the assistance he needed because the patrol car the Mayor took was the only one available. I find this behavior to be not only unprofessional, but to border on criminal.

Tartaglione claims he was coerced to resign from his position because he was told by Commissioner Carpentieri that he should find another job because the Mayor was planning on eliminating a grant the Mayor believed Tartaglione was hired under. The Commissioner claims, however, that officer Anthony Vacca, not Tartaglione, was hired under this grant. Tartaglione began looking for new employment approximately thirty days before his resignation and was interviewing for jobs while still working at the Village police department. Tartaglione was not active in the police association and resigned before the formation of the PBA. He played no active role in the PBA nor did he solicit funds for it. On April 6, 1996, Tartaglione issued a traffic ticket to Tracy Lindberg. Tartaglione also claims he was retaliated against because he refused to "fix" this ticket when asked by Mayor Carey.

The Village Board, at a regularly scheduled meeting on May 5, 1997, did not approve the recommendation of Mayor Thomes, who succeeded Carey in April 1997, to send Angela Geraci, the sister of Heidi Geraci, and three others to the Dutchess County Law Enforcement Academy for enrollment in the basic course for police officers. To be eligible for enrollment at the Academy, an applicant had to be a sworn officer in the employ of a police department with certification from the department that the enrollee had the approval of the department for attendance and was covered by the municipality's workers' compensation policy. Angela Geraci was not employed by the police department and had no promise of employment with the Village of Pawling upon completion of the Academy.

On June 5, 1995, the Village Board amended the rules and regulations of the police department to permit officers to form a police association. Mayor Carey and the Trustees had received numerous complaints of intimidation from residents regarding the solicitation of funds by the PBA. Accordingly, the Village issued an administrative directive that limited the manner in which solicitations could be made by the PBA. In April 1997, the Village commenced an Article 78 proceeding against the Pawling PBA seeking to enjoin its fundraising activities insofar as they were conducted in violation of the administrative directive.

Next, the plaintiffs claim that as retaliation the defendants refused to make critical, structural repairs to the police headquarters to prevent, *inter alia*, the collapse of the roof and substantial leaks. The Village, however, engaged an engineering firm to evaluate the police headquarters and its report indicates minimal repairs amounting to between $4500 and $5000 were all that were needed.

The Village's Police Department was abolished effective September 30, 1997. The Village Board enacted a local law which dissolved the police department pursuant to Village Law § 8–800 and thereafter a permissive referendum was held pursuant to Village Law § 9–900, by which the citizens of the Village voted for the dissolution 478 to 113.

As stated previously, the plaintiffs claim they have been subjected to adverse employment action due to their active involvement in the formation of a police association and the PBA. The defendants, however, claim they are entitled to summary judgment because the plaintiffs did not engage in protected speech, and even if the did, they did not experience adverse employment action.

## DISCUSSION

### 1. Summary Judgment Standard

█ A motion for summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir.1996); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The court is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos*, 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Hayes*, 84 F.3d at 619.

█ In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 382 (2d Cir.1996); *In re State Police Litigation*, 88 F.3d 111, 123 (2d Cir.1996). The Court must not weigh evidence or assess the credibility of potential witnesses, for such evaluations are to be conducted solely by the jury. *Hayes*, 84 F.3d at 619; *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994); *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir.1994). A finding of disputed material facts that could reasonably be resolved in favor of either party precludes summary judgment. *Wernick*, 91 F.3d at 382 (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505).

█ Generally, the burden is on the moving party to demonstrate that there is no genuine dispute respecting any material fact and that he is entitled to judgment as a matter of law. *In re State Police Litigation*, 88 F.3d at 123; *Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). To successfully oppose a motion for summary judgment, the responding party "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A summary judgment motion cannot be defeated through mere speculation or conjecture. *Pollis v. New Sch. for Social Research*, 829 F.Supp. 584, 586 (S.D.N.Y.1993) (citing *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (other citations omitted)).

### 2. First Amendment Retaliation

█ The defendants move for summary judgment on the plaintiffs' First Amendment retaliation claim. To establish a *prima facie* case of First Amendment retaliation, a public employee must establish that his speech may be fairly characterized as constituting speech on a matter of public concern, *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and that the speech was "at least a 'substantial' or 'motivating' factor" in the adverse action taken by the employer. *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058 (2d Cir. 1993) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Thus, a plaintiff must show that he suffered adverse employment action and that there is a causal connection between the protected speech and the adverse employment action. *Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir.1994). This causal connection between the speech and the adverse employment action must be sufficient to warrant an inference that the "speech was a substantial motivating factor in the adverse employment action." *Id.* Further, the claimed adverse employment action must relate to a significant aspect of the employment relationship, *Rutan v. Republican Party*, 497 U.S. 62, 75, 110 S.Ct. 2729, 111

L.Ed.2d 52 (1990), and create "a materially adverse change in the terms and conditions of employment." *Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997) (internal quotations omitted), cert. denied, —— U.S. ——, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997).

■ If the employee meets this initial burden, the government employer may nonetheless escape liability in either of two ways. First, the government can prevail if it can show that it reasonably believed that the speech would potentially interfere with or disrupt the government's activities, and can persuade the court that the potential disruptiveness outweighed the First Amendment value of that speech. *Heil v. Santoro,* 147 F.3d 103, 109 (2d Cir.1998) (citations omitted). Second, the government can avoid liability if it can show that it would have taken the same adverse action in the absence of the protected speech. *Id.*

■ The question of whether an "employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–148, 103 S.Ct. 1684. Speech will be fairly characterized as a matter of public concern if it relates to any matter of political, social, or other concern to the community. *Id.,* 461 U.S. at 146, 103 S.Ct. 1684. A public employee's speech on matters of purely personal interest or internal office affairs does not constitute a matter of public concern and is, in contrast, not entitled to constitutional protection. *See Verri v. Nanna,* 972 F.Supp. 773, 785 (S.D.N.Y. 1997) (citations omitted); *see also Connick,* 461 U.S. at 148–149, 103 S.Ct. 1684 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case."). "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147, 103 S.Ct. 1684. The First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs. *Id.* at 149, 103 S.Ct. 1684.

■ The formation of, and participation in, a police association and PBA, as well as Tartaglione's letter to the town newspaper concerning actions by the Mayor which could affect the public safety, although not abundantly clear from the admissible facts adduced by the plaintiffs, could be considered matters of public concern. Thus, for the purposes of this motion I will assume, without deciding, that they are matters of public concern. Plaintiff Angela Geraci, however, has adduced no admissible material facts showing that she engaged in any First Amendment activity. The defendants are thus granted summary judgment on Angela Geraci's First Amendment claims.

Although Davis and Tartaglione may have spoken on matters of public concern, they have adduced no admissible evidence tending to show that they suffered actual adverse employment action, or assuming *arguendo* adverse employment action, a causal connection between their speech and the adverse action taken by the employer, as required.

With regard to the repairs at the police station, the plaintiffs have adduced no material facts for the Court to conclude that major structural repairs were deliberately ignored in retaliation to their protected speech. Further, the plaintiffs have not rebutted the defendants submission of an engineering report detailing the nature of, and necessity for only minor repairs.

■ The Village's contact with Davis' employer at the New York State Division for Youth regarding Davis' abuse of workers' compensation benefits, does not amount to adverse employment action. Davis pled guilty to Filing a False Instrument in the First Degree based on his conduct of claiming an on-the-job injury at the Division while still working at the police department. An employer's communication with another employer of a common employee's well documented misconduct, is not an example of unconstitutional conduct, but rather is a reasonable employment management decision that will not be disturbed by this Court under the circumstances presented here. The plaintiffs have adduced no admissible evidence that the defendants communicated "false information" to the Division on a "false pretext."

■ The defendants' denial of Davis' request for reimbursement of $150 for an undercover drug purchase is an event too trivial and inconsequential to amount to a constitutional violation. *See Bernheim v. Litt,* 79 F.3d 318, 326 (2d Cir.1996).

■ The Village of Pawling's police department was abolished effective September 1997. The Village Board enacted a local law that dissolved the department and thereafter a permissive referendum was held where the Village's citizens voted to dissolve the department 478 in favor and 113 opposed. Despite the fact that this alleged adverse action is not delineated in the complaint, this action is not a basis of adverse action considering it was a democratic decision made by the voting public of the Village. That the plaintiffs claim they were adversely affected by the democratic process does not mean their constitutional rights were violated, and indeed, they were not. *See Pesano v. Anderson,* 97 Civ. 4049(CM), 1999 WL 232037, at *4 (S.D.N.Y. April 13, 1999) (dismissing the complaint because the plaintiff's constitutional rights were not violated by the decision of the voters of Hyde Park not to reelect the plaintiff).

■ Davis did not suffer adverse employment action that is causally connected to First Amendment activity as a result of the regulation by the Village in November 1995 governing the off-duty employment of police officers in several fields within 20 miles of the Village. A memo by Commissioner Carpentieri indicates that as of June 19, 1995, he had been asked to research the propriety of off-duty employment. While Davis may seek to claim that he was singled out by this regulation, the plaintiffs have not rebutted the defendants admissible evidence that this regulation applied to all officers. Further, the regulation of police officers' off duty employment is commonplace and lawful. *See Flood v. Kennedy,* 12 N.Y.2d 345, 239 N.Y.S.2d 665, 190 N.E.2d 13 (1963); *McMorrow v. Rozzi,* 136 A.D.2d 639, 523 N.Y.S.2d 600 (2d Dep't 1988). The Village has a legitimate and bonafide governmental purpose in limiting potential liability and the harassment of citizens under a perceived color of law. Indeed, the police department had received a complaint from a private citizen regarding Davis' off-duty conduct as a private security guard/process server. Further, Davis has adduced no admissible facts tending to show how this action materially affected his employment with the police department.

■ Davis claims he suffered adverse employment action by the termination of the title of investigator. Departmental reorganizations, however, are part of the day to day administration of local government and, on these facts, do not rise to the level of a constitutional deprivation or adverse employment action. *See Pavonne v. Lindau,* 96 Civ 4993(CLB), (S.D.N.Y. Dec. 17, 1997). Assuming *arguendo,* Davis had adduced facts tending to show this decision was indeed adverse and causally connected to protected speech, the defendants would still be entitled to summary judgment. The plaintiffs have not rebutted the defendants' submissions that this position, with no additional pay or rank, had been the

cause of several complaints. Therefore, the Village had a legitimate non-discriminatory reason for the action.

 In the face of complaints by residents of the Village, the Village Board decided to regulate the manner in which the PBA could solicit funds. Thus, the Village had a legitimate, non-discriminatory reason for the action, which has not been controverted by the plaintiffs. When this directive was violated by the PBA, the Village initiated an Article 78 proceeding against the PBA and not against any of the individual plaintiffs. The Village did not completely ban solicitation, the directive simply attempted to address the citizens' complaints. In any event, a municipality can regulate the solicitation of funds by police officers. *See McGuire v. Krane,* 48 N.Y.2d 661, 421 N.Y.S.2d 348, 396 N.E.2d 742 (1979); *People of the State of New York v. New York State Federation of Police,* 188 A.D.2d 689, 590 N.Y.S.2d 573 (3d Dep't 1992).

As explained more fully below, Tartaglione has adduced no admissible facts tending to show that he was forced from the police department due to his protected speech.

Because of the absence of adverse employment action, the defendants are granted summary judgment on Tartaglione and Davis' First Amendment claims.

 A material issue of fact exists as to whether Heidi Geraci suffered adverse employment action due to her First Amendment Activity.

### 3. *Due Process Claims*

 Heidi Geraci alleges that her right to due process was violated by the withholding of payroll taxes from § 207–c salary and by the debiting of sick days from her account while she was out of work due to an on-the-job injury. As an initial matter, Geraci has not controverted the defendants' admissible evidence demonstrating that any accumulated sick days debited until the determination that Geraci

was entitled to § 207–c benefits were timely restored. Thus, this allegation does not support a due process violation claim. Further, this Court does not believe the temporary withholding of payroll taxes constitutes a deprivation of property within the meaning of the protections afforded by the due process clause. As is commonly known, and as all working citizens in the United States encounter, an employer is required to deduct payroll taxes from an employee's paycheck and to remit to the government as an estimation of the taxpayer's contribution. With the filing of an income tax return, an employee is either required to pay more tax liability to the government or given a refund for any excess amount paid. Ms. Geraci contends that payroll deductions effected in this manner violated due process.

In any event, if this payroll tax could indeed be considered a deprivation of property, there were adequate post-deprivation remedies available to Geraci—namely the commonplace filing of a tax return. Accordingly, since this claim is frivolous, the defendants are granted summary judgment on Geraci's due process claim.

 Davis also claims his due process was violated by the regulation of his off-duty employment. An Article 78 petition, however, is an adequate post-deprivation remedy for due process purposes for violations due to the random and arbitrary acts of state employees. *See Hellenic American Neighborhood Action Committee v. City of New York,* 101 F.3d 877, 881–882 (2d Cir.1996). The plaintiff's claim that he need not have availed himself of an Article 78 proceeding because actions brought under § 1983 are free of the requirements of the exhaustion of state or administrative remedies is inapposite. "[T]here is no constitutional violation (and no available 1983 action) when there is an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *Id.* at 882. Ac-

cordingly, the defendants' motion for summary judgment is also granted on Davis' due process claim.

#### 4. Constructive Discharge

Tartaglione alleges that he was constructively discharged from the police department. He asserts that because he heard rumors that his position was going to be terminated he was coerced to resign. A constructive discharge occurs when the employer, rather than directly terminating the employee, " 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.' " *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983) (quoting *Young v. Southwestern Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975)). The standard is not easily met. A plaintiff does not have a remedy by simply showing that his working conditions were difficult or unpleasant. *See Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir.1993). The evidence must establish that the "employer deliberately created working conditions that were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Id.* (quoting *Pena*, 702 F.2d at 325) (internal quotations omitted).

Here, a reasonable person in Tartaglione's shoes would not have felt compelled to resign. Further, Tartaglione has adduced no facts upon which a reasonable juror could find that the defendants deliberately created intolerable working conditions in order to force his resignation. Accordingly, the defendants' motion for summary judgment on this claim is granted.

#### 5. Geraci's New York Human Rights Claim

Heidi Geraci's complaint alleges that,

> Harrington's publication of Heidi's gender discrimination complaint deprived Heidi of her right to a workplace free from retaliation for having opposed gender based discrimination in the workplace which right is guaranteed by reason of Section 296 et seq. of the New York State Executive Law.

Complaint p. 12. New York Executive Law § 296 claims are evaluated under standards identical to the standards applied to claims under Title VII. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 n. 5 (2d Cir.1995). Accordingly, a *prima facie* case of retaliation under § 296 requires the plaintiff to show: 1) participation in a protected activity known to the defendant; 2) an employment action disadvantaging the plaintiff; and 3) a causal connection between the protected activity and the adverse employment action. *Id.* at 1308. Here, Geraci's claim fails because she has adduced no admissible material facts showing gender based retaliation after the writing of her May 1997 letter to Commissioner Carpentieri that was allegedly publicized by Harrington. Accordingly, this claim is dismissed. Fed.R.Civ.P. 12(b)(6). While the plaintiffs' brief in opposition delineates a general discrimination claim under § 296 which may be viable, the § 296 claim before this Court as alleged in the complaint is an unsupported § 296 retaliation claim.

#### 6. Qualified Immunity

The defendants also contend that the individual defendants, David Kelly, Robert Liffland and Cheryl Harrington, are immune from suit because of qualified immunity.

Qualified immunity entitles public officers to be shielded from liability for damages unless their conduct violates clearly established constitutional rights of which a reasonable person would have known, or unless it was objectively unreasonable for them to believe that their acts did not violate those rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *See Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir.1996); *Anderson v. Creighton*, 483 U.S. 635, 638–639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The right alleged to have been violated must be clearly established at a level of specificity such that "a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. To be deprived of the qualified immunity defense, the violation of plaintiff's rights must be so clear that no reasonable public official could have believed that his actions did not violate plaintiff's rights. *Id.*

 Where the alleged constitutional violation includes a subjective component, as in the case of retaliation claims, the plaintiff "must offer specific evidence of improper motivation" to resist successfully a summary judgment motion. *Gomez v. Pellicone*, 986 F.Supp. 220, 226 (S.D.N.Y. 1997) (quoting *Blue v. Koren*, 72 F.3d 1075, 1083 (2d Cir.1995)). "If the conduct was objectively reasonable, a conclusory proffer of an unconstitutional motive should not defeat the motion for summary judgment." *Blue v. Koren*, 72 F.3d 1075, 1084 (2d Cir.1995). The particularized evidence may include "expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." *Id.*

With respect to each defendant, the qualified immunity claim is to be evaluated, of course, solely on the basis of that defendant's conduct. The plaintiffs have failed to adduce triable facts tending to show that Kelly, Liffland or Harrington violated clearly established rights. Material issues of fact exist as to whether the conduct of Carey violated a right which was clearly established by requiring Heidi Geraci to resign as vice president of the police association in order to be promoted to sergeant.

## CONCLUSION

Based on the above, the defendants are granted summary judgment on claims one and two of Angela Geraci, Robert Davis and Nicholas Tartaglione. The defendants' summary judgment motion as to Heidi Geraci's first and second claims, however, is denied. The defendants are granted summary judgment on claims three, four, five, and six. The parties are directed to file final pre-trial papers by September 14, 1999, and to appear for a final pre-trial conference on September 17, 1999, at 3:30 p.m.

**SO ORDERED**